| | | |
|---|---|---|
| RETURN DATE: JULY 18, 2023 | : | SUPERIOR COURT |
| CLARK B. JONES | : | JUDICIAL DISTRICT OF HARTFORD |
| v. | : | AT HARTFORD |
| ACUREN INSPECTION, INC. | : | JUNE 30, 2023 |

## COMPLAINT

**FACTS**

1. At all times relevant hereto, the plaintiff CLARK B. JONES was and is a resident of East Hartford, Connecticut.

2. At all times relevant hereto, the defendant, ACUREN INSPECTION, INC. [hereinafter "Acuren"], has a laboratory location at 100 Prestige Park Road, East Hartford, CT 06108 and corporate office at 30 Main Street, Suite 402, Danbury, CT 06810.

3. Defendant Acuren is incorporated under the laws of the State of Connecticut.

4. Defendant Acuren's agent for service is Corporation Service Company, 225 Asylum Street, 20th Floor, Hartford, CT 06103.

5. Defendant Acuren employs more than three employees.

6. Defendant Acuren is an employer as defined in the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46(a)-51(10).

7. Defendant Acuren is an employer within the meaning of the Connecticut Palliative Use of Marijuana Act ("PUMA"), Conn. Gen. Stat. §21a-408p(a)(3).

8. At all relevant times herein, Plaintiff was an employee of Defendant Acuren as defined in the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46(a)-51(9).

9. Plaintiff is a "qualifying patient" under the Connecticut Palliative Use of Marijuana Act, Conn. Gen. Stat. §21a-408(20).

10. Plaintiff is disabled within the meaning of Conn. Gen. Stat. §46a-51 in that Plaintiff suffers from severe back and spinal pain as a result of several surgeries/fusions which affects one or more major life activities including, but not limited to, functioning and sleeping without severe pain.

11. In 1993, Plaintiff was hired as a laboratory technician for Connecticut Metallurgical, Inc.

12. At all times relevant hereto, Plaintiff worked at the East Hartford, Connecticut laboratory location and performed his work at or above satisfactory levels.

13. In 2001 and 2005, Plaintiff had major back and spine surgeries including, but not limited to, a C2-T1 fusion. Thereafter, Plaintiff continued to suffer from back and spinal pain resulting from his debilitating medical condition as defined in Conn. Gen. Stat. §21a-408(4).

14. In 2019 Connecticut Metallurgical, Inc. was acquired by Defendant Acuren. At that time, Defendant Acuren implemented a drug screening test only for new employees.

15. As Plaintiff's back and spinal pain became unbearable, in an effort to alleviate the extreme pain, Plaintiff's doctor prescribed pain medication, as well as, cannabis (gummy) with melatonin and THC for his debilitating medical condition and to help with the pain he suffered while trying to sleep.

16. In mid-2021, Defendant Acuren held a meeting and announced that it was requiring all employees to undergo drug testing. Such testing was to be completed by the year end of 2021.

17. Immediately after the meeting, Plaintiff notified Wendy Kirby, HR Representative, and his Supervisor, John Abiadesign, of his prescriptions for pain medication including his marijuana prescription certificate. Defendant Acuren never requested a copy of such certificate.

18. Defendant Acuren's employee handbook states that opioids or cannabis found in an employee's system "without a prescription" is a violation of company policy.

19. On or about the beginning of December 2021, Plaintiff submitted to drug test.

20. On December 9, 2021, Regional Manager, Andrew Dirats, called the plaintiff into his office and informed the plaintiff that he failed the drug test taken the week prior due to his medical marijuana use.

21. During the meeting on December 9, 2021, Plaintiff and Andrew Dirats discussed the company drug policy that stated a violation of policy would be found if an individual failed the drug test without prescriptions for opioids and/or cannabis.

22. Plaintiff stated to Andrew Dirats that he never thought he was in violation of any company policy because he had a prescription for all of his pain medication for his daily pain including the cannabis and his management team had prior knowledge of his prescriptions and medical marijuana use.

23. During the December 9, 2021 meeting, Andrew Dirats stated that Plaintiff was being placed on suspension, but he was going to explore what could be done for the plaintiff. Mr. Dirats stated, "I'm supposed to fire you. However, because you have been a good employee for 26 years, if you go through the drug program, pass the drug test and agree to random drug tests in the future, you can return to work."

24. Following the meeting with Andrew Dirats, the plaintiff contacted Tonia Hill, Administrator, regarding seeking some guidance and his options concerning the positive test result

from his medical marijuana use. Instead, Ms. Hill directed the plaintiff to Wendy Kirby, HR Representative.

25. On December 10, 2021, Plaintiff contacted Wendy Kirby seeking guidance on what steps he needed to take to return to work. Ms. Kirby directed the plaintiff to contact SAP.

26. Following the advice from Ms. Kirby, the plaintiff contacted SAP.

27. Plaintiff received a phone call from DISA requesting that he register with a nonrefundable deposit of $500.00.

28. Complainant paid the deposit of $500.00 and was told that he would incur additional fees for classes that he would be required to take. Plaintiff was also told that a counselor was going to be contacting him.

29. Several days later, Plaintiff received a call from a counselor stating that he had to "complete an out-of-pocket" program and get a certificate of completion in order to report back to work.

30. Plaintiff stopped using his prescription pain medication including his medical marijuana for five days.

31. On December 18, 2021, Complainant contacted Wendy Kirby and explained to her what his body went through during the five days of not taking his prescription pain medication including medical marijuana and how he was in excruciating pain, could not function and could not sleep. He further explained that, as a result of such experience, it was unlikely that he could proceed with the program for which he was required to complete in order to return to work and that he could not provide a negative test result due to the necessity of his medical marijuana use.

32. During Plaintiff's telephone conversation with Wendy Kirby on December 18, 2021, Plaintiff stated that it seemed as if he was not being given any options or accommodations

such as not having to provide a negative test result in order to continue his employment with Defendant Acuren. Ms. Kirby did not provide any options or guidance to the plaintiff.

33. Defendant Acuren unlawfully penalized and terminated the Complainant due to his disability and medical marijuana use, which is necessitated by his back and spinal debilitating condition.

34. On December 23, 2021, Plaintiff received a text from Wendy Kirby stating that his benefits were scheduled to end December 31, 2021.

35. Defendant Acuren discriminated against Plaintiff based upon his ongoing medical condition and disability, and prescribed use of marijuana.

36. Plaintiff's employment with Defendant Acuren was Plaintiff's primary and only source of income.

37. As a result of Defendant Acuren's actions, Plaintiff was precluded from earning a living and lost all health insurance issued through Defendant Acuren.

38. As a result of Defendant Acuren's actions, Plaintiff was forced to expend sums of money in order to obtain and maintain private health insurance.

39. As a result of Defendant Acuren's actions, Plaintiff was forced to use all of his savings in order to provide for his everyday needs.

40. As a result of Defendant Acuren's conduct, including termination of employment, the Plaintiff suffered, and continues to suffer, economic loss and severe emotional distress damages.

41. All conditions precedent to jurisdiction under the Connecticut Fair Employment Practices Act, C.G.S. §46a-100 have occurred. Prior to instituting this action, the Plaintiff dual filed a charge with the Connecticut Commission on Human Rights and Opportunities and the Equal

Employment Opportunity Commission. The filing was commenced within 300 days of the commission of the unlawful employment practices alleged therein. Plaintiff received a Release of Jurisdiction [hereinafter "ROJ"] letter dated April 29, 2023. The Plaintiff has therefore exhausted his administrative remedies, and this complaint is brought within 90 days of the ROJ letter. Defendant Acuren's legal counsel in the underlying administrative matter received a copy of the ROJ letter attached hereto as Exhibit A.

**FIRST COUNT: DISABILITY DISCRIMINATION AND DEPRIVATION OF RIGHTS IN VIOLATION OF C.G.S. §46a-60(b)(1) AND C.G.S. §46a-58(a)**

1. The Plaintiff repeats and re-alleges paragraphs 1 through 41 above and incorporates them as paragraphs 1 through 41 of this First Count as if fully stated herein.

42. At all times relevant herein, Defendant Acuren was responsible for the acts, conduct, errors and/or omissions of its employees, officers, agents, servants, administrators and/or representatives.

43. At all times relevant to this Complaint, Plaintiff had a physical disability as defined in C.G.S. §46a-51(15).

44. Plaintiff was qualified to perform the essential functions of his job.

45. Defendant Acuren was fully aware of Plaintiff's medical condition and disability.

46. Defendant Acuren intentionally discriminated against Plaintiff based on his disability.

47. Defendant Acuren interfered with Plaintiff's rights and privilege of employment on the basis of his disability.

48. Defendant Acuren's termination of Plaintiff based on his disability precluded the Plaintiff from earning a living, effectively depriving Plaintiff of his rights in violation of C.G.S. §46a-58a.

49. Defendant Acuren terminated Plaintiff's employment and discriminated against him in the terms and conditions and/or privileges of his employment based on his disability.

50. Defendant Acuren's reasons for the termination are merely a pretext for illegal discrimination.

51. Plaintiff was replaced by an individual with no known disability.

52. As a result of the foregoing unlawful conduct, Plaintiff has suffered, and will continue to suffer monetary damages, including, but not limited to, loss of wages, loss of employment benefits and insurance, loss of vacation time and loss of paid sick time.

53. As a further result of the foregoing unlawful conduct, Plaintiff has suffered and will continue to suffer, emotional distress, humiliation and anxiety.

54. As a further result of the foregoing unlawful conduct, Plaintiff has incurred, or will incur in the future, attorney's fees and costs.

55. As a direct and proximate result of Defendant Acuren's wrongful conduct, the Plaintiff is entitled to recover from Defendant Acuren compensatory, general and consequential damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees and costs pursuant to C.G.S. §46a-104.

56. Defendant Acuren's wrongful conduct was willful, wanton and/or malicious, and, as such, Plaintiff is entitled to punitive damages.

57. This Complaint is being filed within the statutory limitation periods.

58. Plaintiff has made good faith efforts to reasonably mitigate his damages.

**SECOND COUNT: VIOLATION OF PALLIATIVE USE OF MARIJUANA ACT, C.G.S. §21a-408p**

1. The Plaintiff repeats and re-alleges paragraphs 1 through 41 above and incorporates them as paragraphs 1 through 41 of this Second Count as if fully stated herein.

42. Defendant Acuren is an employer within the meaning of C.G.S. §21a-408p(a).

43. Plaintiff was prescribed medical marijuana by his physician to treat his debilitating medical condition and disability.

44. Pursuant to C.G.S. §21a-408d, Plaintiff's physician submitted the required forms to the Department of Consumer Protection to complete his registration as a "qualifying patient" authorizing him to use medical marijuana for palliative care.

45. Plaintiff was certified as a "qualifying patient" and issued a registration certificate.

46. At all times relevant hereto, Plaintiff has never been impaired or otherwise unable to perform the duties of his job due to his medical marijuana use.

47. Plaintiff is a "qualifying patient" within the meaning of C.G.S. §21a-408a(10).

48. Defendant Acuren knew that Plaintiff had a prescription for medical marijuana and that Plaintiff was a "qualifying patient."

49. C.G.S. §21a-408p(b)(3) prohibits Defendant Acuren from discriminating against Plaintiff by discharging him based on his status as a qualified patient under the statute.

50. By discharging Plaintiff because he is a qualified patient, Defendant Acuren has violated the law pursuant to C.G.S. §21a-408p(b)(3).

51. As a result of the foregoing unlawful conduct, Plaintiff has suffered, and

will continue to suffer monetary damages, including, but not limited to, loss of wages, loss of employment benefits and insurance, loss of vacation time and loss of paid sick time.

52. As a further result of the foregoing unlawful conduct, Plaintiff has suffered and will continue to suffer, emotional distress, humiliation and anxiety.

53. As a further result of the foregoing unlawful conduct, Plaintiff has incurred, or will incur in the future, attorney's fees and costs.

54. As a direct and proximate result of Defendant Acuren's wrongful conduct, the Plaintiff is entitled to recover from Defendant Acuren compensatory, general and consequential damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees and costs.

55. Defendant Acuren's wrongful conduct was willful, wanton and/or malicious, and, as such, Plaintiff is entitled to punitive damages.

56. This Complaint is being filed within the statutory limitation periods.

57. Plaintiff has made good faith efforts to reasonably mitigate his damages.

**THIRD COUNT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1. The Plaintiff repeats and re-alleges paragraphs 1 through 41 above and incorporates them as paragraphs 1 through 41 of this Third Count as if fully stated herein.

42. Defendant Acuren engaged in unreasonable, unnecessary, hostile and discriminatory conduct during the course of the Plaintiff's employment.

43. The Plaintiff was terminated from his employment with Defendant Acuren in furtherance of the unreasonable, unnecessary, hostile and discriminatory conduct he experienced during the course of her employment.

44. As a direct and proximate result of the Defendant Acuren's wrongful conduct, of terminating the Plaintiff, Plaintiff has suffered damages, including, but not limited to, extreme emotional distress, frustration, sleeplessness, anxiety, fear, nervousness and depression.

45. Defendant Acuren and its employees and/or agents knew or should have known that emotional distress was likely to result as a consequence of Defendant Acuren's conduct, and therefore, committed intentional infliction of emotional distress.

46. Defendant Acuren's actions caused severe emotional distress, anguish, anxiety and suffering to the Plaintiff.

47. Defendant Acuren's actions were willful, wanton and/or malicious and, as such, Plaintiff requests punitive damages.

**FOURTH COUNT: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1. The Plaintiff repeats and re-alleges paragraphs 1 through 44 of the Third Count and incorporates them as paragraphs 1 through 44 of this Fourth Count as if fully stated herein.

45. Defendant Acuren, in discriminating and terminating the Plaintiff, created an unreasonable risk of causing emotional distress upon the Plaintiff.

46. Defendant Acuren's actions caused severe emotional distress, anguish, anxiety and suffering to Plaintiff.

10
MONARCH LAW, LLC
1 SCHOONER LANE, 1C • MILFORD, CONNECTICUT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

47. Defendant Acuren's conduct was extreme and outrageous and such behavior should have been foreseen by Defendant Acuren as causing illness or bodily harm to the Plaintiff as a result of such conduct.

WHEREFORE, the Plaintiff claims:

    a. Compensatory damages including, but not limited to, lost wages and benefits;

    b. Reinstatement or front pay;

    c. Punitive damages;

    d. Reasonable attorney's fees and costs; and

    e. Such other relief in law or equity as this Court deems appropriate and equitable.

Dated at Milford, Connecticut this 30th day of June, 2023.

THE PLAINTIFF,

By: _____
Daniel Seiden, Esq.
Monarch Law, LLC
1 Schooner Lane, Suite 1C
Milford, CT 06460
(203) 875-0201
dan@monarchlawct.com

| | | |
|---|---|---|
| **RETURN DATE:**   **JULY 18, 2023** | : | **SUPERIOR COURT** |
| **CLARK B. JONES** | : | **JD OF HARTFORD** |
| **VS.** | : | **AT HARTFORD** |
| **ACUREN INSPECTION, INC.** | : | **JUNE 30, 2023** |

### STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, exceeds the sum of Fifteen Thousand ($15,000) Dollars.

THE PLAINTIFF,

By: _____
Daniel Seiden, Esq.
Monarch Law, LLC
1 Schooner Lane, Suite 1C
Milford, CT 06460
(203) 875-0201
dan@monarchlawct.com

STATE OF CONNECTICUT:
: ss: HARTFORD        JULY 6, 2023
COUNTY OF HARTFORD   :

    Then and by virtue hereof, and by direction of the Plaintiff's Attorney, I left a verified true and attested copy of the original WRIT, SUMMONS, COMPLAINT AND STATEMENT OF AMOUNT IN DEMAND, with and in the hands of SHELLEY KURPASKA, FULFILLMENT SPECIALIST OF CORPORATION SERVICE COMPANY, 225 ASYLUM STREET, 20TH FLOOR, AGENT FOR SERVICE for the within named defendant **ACUREN INSPECTION, INC.,** in the said town of HARTFORD, County of Hartford.

    The within is the original WRIT, SUMMONS, COMPLAINT AND STATEMENT OF AMOUNT IN DEMAND, with my doings thereon endorsed.

| | |
|---|---|
| Verified pages | $14.00 |
| Endorsements | 2.00 |
| Service | 50.00 |
| Travel | 12.00 |
| Total | $78.00 |

ATTEST:

KEITH NIZIANKIEWICZ
CT STATE MARSHAL
HARTFORD COUNTY

**KEITH D. NIZIANKIEWICZ**
*Connecticut State Marshal*
P.O. BOX 280867 • EAST HARTFORD, CONNECTICUT 06128-0867 • OFFICE: (860) 610-0295